### R. L. LOWE v. STATE OF FLORIDA

19 So. (2nd) 106                                        June Term, 1944
July 25, 1944                                                  En Banc
Rehearing denied September 15, 1944

*W. D. Bell, E. M. Magaha* and *R. Percy Jones,* for appellant.

*J. Tom Watson,* Attorney General, *John C. Wynn,* Assistant Attorney General, and *Bourke Floyd,* Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

The appellant, R. L. Lowe, was convicted by a jury of Lee County, Florida, for the violation of Section 794.05, Fla. Stats. 1941 (F.S.A.). He was by the trial court sentenced to the State Prison, at hard labor, for a period of five years. Section 794.05 provides that any person who has unlawful carnal intercourse with any unmarried person, of previous chaste character, who at the time of such intercourse is under

the age of 18 years, shall be punished by imprisonment in the State Prison for not more than ten years, or by a fine not exceeding two thousand dollars.

It is shown by the record that the prosecutrix was born on July 14, 1931, and the trial occurred in November, 1943. The crime was alleged to have been committed on May 18, 1943. The prosecutrix was living with her mother and stepfather, Eph Wilson. We infer from a study of the record that the prosecutrix's family did not have a fixed place of abode, but lived at different places referred to in the testimony (presumably in Lee County) as the "Moody Place," Tice, Shultie's House, Gould, Buckinham, and other places. Other children were in the Wilson family, but the prosecutrix was removed from the family about the time of the filing of the information.

The appellant is shown to have raised ten children and had relatives in Lee County and environs. His vocation or employment at the time of the alleged crime is not shown by the record. It does appear, however, that he and his wife had separated prior to the time of the filing of the information; that the Wilson family, inclusive of the prosecutrix, had lived in the same home with the appellant, or near him, at the places, or some of them, above named. The appellant when testifying at the trial stated that he was born in 1873 and therefore was 67 years of age. If he was born in 1873 and the trial occurred in 1943, he would have been approximately 70 years of age at the time of the trial. It is reasonable to assume that the appellant's age at the time of the trial was between 67 and 70.

Section 932.05, Fla. Stats. 1941 (F.S.A.), provides that all offenses not punishable with death . . . shall be prosecuted within two years after the same shall have been committed. . . . See Horton v. Mayo, 143 Fla. 611, 15 So. (2nd) 327. The law places the burden of proof on the prosecution, upon the trial of a criminal case, to show that the commission of the offense as charged was committed within the two year period prescribed by statute. See Gomez v. Spencer, 113 Fla. 220, 151 So. 395. The presentation of an indictment or the filing of an information sufficiently commences a prosecution so

as to satisfy the running of the statute of limitations. See State ex rel. Silverman v. Coleman, 139 Fla. 656, 190 So. 811. The State is not bound to the exact date alleged but the date as established must be within the two year period fixed by statute. See Hunter v. State, 85 Fla. 91, 95 So. 115.

The essential elements of this statutory crime are viz: (1) carnal intercourse; (2) the person must be unmarried at the time of the intercourse; (3) the person must be of previous chaste character; and (4) the person must be under 18 years of age at the time of the unlawful intercourse. See Dallas v. State, 76 Fla. 358, 79 So. 690, 8 A.L.R. 1457; Unter v. State, 85 Fla. 91, 95 So. 115; Thomas v. State, 105 Fla. 332, 141 So. 145; Deas v. State, 119 Fla. 839, 161 So. 729; Hand v. State, 152 Fla. 29, 10 So. (2nd) 714.

As we study the record, no controversy exists between the prosecution and the defendant on two elements of the statutes viz: (1) the prosecutrix was unmarried and had never been married at the time of the alleged carnal intercourse; (2) that the prosecutrix. at the time of the alleged intercourse, was under 18 years of age. The point of cleavage between the prosecution and defense is viz: (3) that the prosecutrix at the time of the alleged intercourse was a person of chaste character; and (4) whether the appellant at any time ever had carnal intercourse with the prosecutrix. The burden of proof by law was cast on the prosecution to establish these two elements (denounced by the statute *supra*) to the satisfaction of the jury beyond a reasonable doubt. It is necessary to analyze the testimony appearing in the record on these controverted issues.

The clause in the statute, *supra*, "of previous chaste character," does not mean purity of mind, nor purity of heart, but purity of body—i.e. that the prosecutrix had never sustained illicit relations with any one prior to the alleged offense with the defendant. See Hunter v. State, supra. A member of the Lee County Welfare Federation testified that on May 22, 1943, the prosecutrix was taken to her office. That she immediately took her (the prosecutrix) to a physician's office in Fort Myers and requested that she by the physician be examined. The examination was made by the

physician and he was called and testified that the examination disclosed "that there had been a penetration (of the vagina) more than one time." On cross examination: "Q. It may be made by the male organ of a man or by other instrument?" "A. Anything."

The prosecution at the trial relied upon the testimony of the prosecutrix alone to satisfy an element of the statute viz: that the prosecutrix at the time of the alleged carnal intercourse was a person of chaste character. The physician's testimony was to the effect that the hymen had been ruptured. That it was easy to rupture and could be ruptured with your fingers. "It (the hymen) is bound to have a hole in it." The prosecutrix testified that she had a girl friend and some boy friends and they were together occasionally. On cross examination the prosecutrix testified: "Q. I want to ask you this: during the last three or four years, isn't it a fact that your mother wouldn't leave you and your stepfather alone in the house because of the fact that your stepfather had been having to do with you and she didn't want to leave you alone? A. She was afraid he might."

One of the grounds for a new trial is newly discovered testimony. It was discovered or learned for the first time after the time of the trial. The new evidence is in the form of an affidavit and by reference made a part of the motion for a new trial. The affidavit set out the newly discovered testimony and is dated November 12, 1943. The verdict of the jury is dated November 4, 1943. The affidavit was made by the prosecutrix's stepfather, Eph Wilson. In the affidavit he stated that the prosecutrix, within two years prior to the date of filing the information, was not a person of previous chaste character, and the affiant recites the facts by him observed between the prosecutrix and a boy by the name of Franklin Baker; that affiant was subpoenaed in the cause as a State witness and attended court during the trial but for some reason unknown to him was not called to testify.

The evidence offered by the prosecution to establish carnal intercourse rests exclusively on the testimony of the prosecutrix. She testified to some five or six separate acts of carnal intercourse with appellant, but these separate acts are

each barred by the two years statute of limitations, except the last alleged act. They were living near Tice and, she testified, "we were at his garden near the pond." It occurred "about seven months ago." "Q. Did you know him on or about the 18th day of May this year (1943)? A. I don't think so." "Q. When did you see him along about that time? A. I don't remember. . . . Q. Then do you remember how many times he had sexual relations there? A. No, sir. . . . Q. Well, did you have another sexual relation with him? A. don't remember. . . ." Q. How many times . . . was it that you had this act performed . . . in the Shultie house? A. I don't remember. . . ." "Q. Would you tell the Court and jury whether that was when you lived at Shultie's house about five years ago? A. I don't remember. . . ." "Q. How many times did the relation exist when you lived at the Moody house? A. I don't remember."

"Q. How long did he (Lowe) live at Williams? A. I don't remember" . . . "Q. Now when was it that you actually moved out there (out from Tice)? A. I don't remember." Q. Can you tell us about how long it was? A. I don't remember? . . . Q. Where was your mother and stepfather? A. I don't remember. . . . Q. How long was this conversation before they actually moved into the house you all moved in? I don't remember. . . . Q. How long did you live out there? A. I don't remember. . . . Q. How long have you known Tom Baker? A. I don't remember." . . . Q. Well, would you say you have known him five or six years? A. I don't remember. . . . Q. Well, tell me how long you have known James Wallace. A. I don't remember. . . . Q. You and Tom were great friends were you not? A. Well, yes . . . "Q. How many times did he give it (money) to you? A. I don't remember. . . . Q. Well, how much was the most? A. I don't remember. . . . Q. Well what else: tell us if you know? A. I don't remember. . . . Q. When were you brought up to the doctor's office and he examined you? A. I don't remember. . . . Q. Was that about the time that Mr. Lowe was first put in jail about this matter or was it after? A. I don't remember."

The Criminal Code makes it the duty of a trial court to

grant a new trial if certain things are established. The pertinent portion of the Criminal Code is Section 920.04, Fla. Stats. 1941 (F.S.A.) viz:

"Grounds for a New Trial.—The court shall grant a new trial if any of the following grounds are established:

"(1) That the jurors decided the verdict by lot;

"(2) That the verdict is contrary to law or the weight of the evidence;

"(3) That new and material evidence, which if introduced at the trial would probably have changed the verdict or finding of the court, is discovered which the defendant could not with reasonable diligence have discovered and produced upon the trial."

In the case of State v. Sears, 148 Fla. 89, 3 So. (2nd) 721, we construed Subsection (3) of the statute, *supra*. The newly discovered evidence was the location and availability of the testimony of the witness Sullivan, an eye witness to the encounter, who could not be located or his attendance obtained until after the rendition of the verdict and judgment. The motion for a new trial was fully sustained by the affidavits made a part thereof. The method of procedure was approved. We held that the newly discovered evidence of Sullivan was cumulative, material and admissible, and whether or not it would on a new trial granted cause a different result in the verdict was speculative.

The allegation of the information, as to the previous chaste character of the prosecutrix, was sustained only by her testimony. She admitted on cross examination that her mother feared or disliked to leave her alone in the home with her stepfather because she (the mother) believed that something improper would occur. The newly discovered testimony in effect is positive that the prosecutrix was not of previous chaste character at the time of the trial. These shadows cast doubt and uncertainty on a vital point of the State's case. The law imposed this burden of proof on the prosecution.

What we have said, *supra,* concerning the inconclusiveness of the testimony offered by the prosecution to sustain the allegations of the information as to a previous chaste

character on the part of the prosecutrix is likewise applicable to the proof offered by the prosecution to establish carnal intercourse. The time of the act being placed at about "seven months ago," the approximate hour, place, occasion and circumstances, etc., are rather indefinite. She replied to many questions propounded seeking this and other pertinent testimony, "I don't remember." We do not overlook our previous holdings to the effect that the weight, sufficiency, and credibility of all the testimony is a jury question.

We have held in many cases if, after a full and careful consideration of the entire record the ends of justice will be best subserved in granting a new trial because of the inconclusiveness of the testimony offered to establish the essential facts necessary to constitue the crime, then, and under these conditions and circumstances, it becomes the duty of this Court to reverse the cause for a new trial. See Stephens v. State, 140 Fla. 163, 191 So. 294; Reed v. State, 137 Fla. 768, 189 So. 21; Skiff v. State, 107 Fla. 90, 144 So. 323; Nims v. State, 70 Fla. 530, 70 So. 565; Fuller v. State, 92 Fla. 973, 110 So. 528; Ming v. State, 89 Fla. 280, 103 So. 618; Platt v. State, 65 Fla. 253, 61 So. 502; Townsend v. State, 95 Fla. 139, 116 So. 7; Coker v. State, 83 Fla. 672, 93 So. 176; Knowles v. State, 86 Fla. 270, 97 So. 716; Davis v. State, 76 Fla. 179, 79 So. 450.

The judgment appealed from is reversed and a new trial awarded.

BROWN, THOMAS and ADAMS, JJ., concur.

BUFORD, C. J., TERRELL and SEBRING, JJ., dissent.

BUFORD, C. J., dissenting:

I cannot concur in the majority opinion because it is my view that in cases like this where the evidence shows that the female involved has never had sexual intercourse with anyone except the accused she is of chaste character to all the world except the accused and he cannot be heard to say she is unchaste, although his claim be based on her testimony.

Another and more potent reason why I cannot concur in the majority opinion is that none of the acts of sexual intercourse committed by accused were barred by the statute of

limitation. Those which occurred more than two years before the filing of the information constituted rape (Sec. 794.01 F.S.A. 1941) because the victim was under ten years of age and at a time when she was not morally responsible for her acts of this sort. All the acts which occurred, as shown by the evidence, after she was ten years of age were within the two year statute of limitation.

Judgment should be affirmed on authority of Williams v. State, 92 Fla. 125, 109 So. 305; Hunter v. State, 85 Fla. 91, 95 So. 115.

Judgment should be affirmed.

TERRELL and SEBRING, JJ., concur.